# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| LEONARD M. JIMENEZ and CARMEN M. JIMENEZ § § § *Plaintiffs*, § § v. § § FLAGSTAR BANK, F.S.B. and § AMERICAN HOMES 4 RENT § PROPERTIES ONE, LLC § § *Defendants*. | Civil Action No. SA-13-CV-186-XR |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this date the Court considered Defendant Flagstar Bank, F.S.B.'s motion for summary judgment (docket no. 12). For the following reasons, the Court GRANTS the motion.

### I. Background

**A. Factual Background**

On July 23, 2008, Plaintiffs Leonard M. Jimenez and Carmen M. Jimenez entered into a mortgage with Infinity Alliance, Inc. d/b/a 1st Choice Lending for the purchase of property located at 7503 Forest Stream, Live Oak, Texas 78233. Plaintiffs executed a promissory note (the "Note") and a security agreement (the "Deed of Trust") in connection with the transaction.[1] Thereafter, it is undisputed that the Note and Deed of Trust were transferred to Defendant Flagstar Bank, F.S.B. ("Flagstar").[2]

---

[1] Note, Doc. No. 12, Ex. 1A; Deed of Trust, Doc. No. 12, Ex. 1B.
[2] *See* Pet. ¶ 6, Doc. 1, Ex. C; Assignment of Deed of Trust, Doc. 12, Ex. 1C.

Sometime in 2011, Plaintiffs began having trouble making their mortgage payments.[3] In January 2012, Plaintiffs received a notice of default, informing them of their right to cure their alleged mortgage default by paying the amount of $2,809.67.[4] Though the record is not entirely clear, Plaintiffs likely cured their default at this time.[5] Nevertheless, by March 2012, Plaintiffs again were behind on their mortgage payments.[6] On March 26, 2012, Plaintiffs entered into a forbearance agreement with Flagstar (the "Forbearance Agreement").[7] Through this agreement, Plaintiffs and Flagstar agreed that Plaintiffs' account would be, "allowed to remain delinquent as long as the terms of this agreement [were] followed."[8] Furthermore, pursuant to the agreement, Plaintiffs' monthly mortgage payments were reduced for the months of April to July 2012 by about $300 per month.[9] Plaintiffs assert that they made all of their required payments under the Forbearance Agreement on time.[10]

Soon after entering into the Forbearance Agreement, on April 3, 2012, Flagstar sent Plaintiffs a second notice of default and right to cure, stating that Plaintiffs were in default on their mortgage loan obligations by $2,809.67.[11]

---

[3] Carmen Jimenez Aff. at 1, Doc. 14, Ex. 1.
[4] Notice of Default, dated Jan. 3, 2012, Doc. 14, Ex. 2.
[5] Plaintiff Carmen Jimenez only asserts generally that her and her husband, Leonard Jimenez, "always made [their] payments; although, beginning in 2011, they were sometimes late." Carmen Jimenez Aff. at 1. In April 2012, Plaintiffs received a second notice to cure stating that, "[t]o cure the default we must receive all payments due since 03/01/2012." Notice of Default, dated Apr. 3, 2012, Doc. 12, Ex. 1E. This statement suggests that Plaintiffs were only in default for payments due since March 1, 2012, and that earlier payments had been fully paid. Neither party provided a loan payment history for the Court's review.
[6] *See* Forbearance Agreement at 1, Doc. 12, Ex. 1D; Notice of Default, dated Apr. 3, 2012, Doc. 12, Ex. 1E.
[7] Forbearance Agreement at 2. Plaintiff Carmen Jimenez states in her affidavit that Plaintiffs entered into the Forbearance Agreement in April 2012 and that payments under the agreement began in May 2012; however, the face of the Forbearance Agreement contradicts these assertions. *Compare* Carmen Jimenez Aff. at 1, *with* Forbearance Agreement 1–2. The Court views the evidence in the light most favorable to the nonmoving party; however, where, as here, the face of documentary evidence contradicts Plaintiffs' unsubstantiated assertions, the Court will consider only the documentary evidence and ignore the unsubstantiated assertions. *See Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).
[8] Forbearance Agreement at 1.
[9] Forbearance Agreement at 1; Carmen Jimenez Aff. at 1.
[10] Carmen Jimenez Aff. at 1.
[11] Notice of Default, dated Apr. 3, 2012, Doc. 12, Ex. 1E.

Thereafter, in the summer or fall of 2012, as the Forbearance Agreement was set to expire or after it had already expired, Plaintiffs and Flagstar began discussing a permanent loan modification. Plaintiffs assert that Flagstaff promised Plaintiffs a permanent loan modification if Plaintiffs paid all of their payments under the forbearance agreement on time, which Plaintiffs assert they did.[12] On September 28, 2012, Flagstar sent Plaintiffs a proposed loan modification agreement (the "Proposed Modification Agreement"). The Proposed Modification Agreement would bring the loan current by granting Plaintiffs a "partial claim," through which funds in the amount of $3,538.49 would be advanced to Plaintiffs and applied to Plaintiffs' loan to bring it current.[13] The Proposed Modification Agreement would also lower the interest rate and extend the time for repayment of the loan.[14]

By its terms, however, the Proposed Modification Agreement was not effective immediately. The agreement required Plaintiffs, "to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of [the Proposed Modification Agreement] which, if approved and accepted by [Flagstar] shall bind [Plaintiffs]."[15] Additionally, the September 2012 letter sent with the Proposed Modification Agreement stated, "[t]his modification agreement will not be binding or effective unless and until it has been signed by both you and [Flagstar]."[16] The letter also conditioned effectiveness on there being no adverse changes to Plaintiffs' income since the initial review conducted by Flagstar and Plaintiffs' payment of closing costs.[17] The letter also noted that, "collection activity will

---

[12] Carmen Jimenez Aff. at 1–2.
[13] Sept. 28, 2012 Letter at 1, Doc. 12, Ex. 1F; *see Ferrell v. U.S. Dept. of Hous. & Urban Dev.*, 186 F.3d 805, 808 n.2 (7th Cir. 1999) (explaining the US Department of Housing and Urban Development's partial claim program).
[14] Proposed Modification Agreement ¶ 2.
[15] Proposed Modification Agreement ¶ 7.
[16] Sept. 28, 2012 Letter at 1.
[17] Sept. 28, 2012 Letter at 1.

continue pending the modification agreement becoming binding and effective."[18] Finally, "temporary payment coupons" were enclosed with the letter to help Plaintiffs keep track of their required monthly payments until they began receiving their modified payment statements.[19]

Plaintiffs assert that they did not receive this September 2012 letter.[20] Nevertheless, Plaintiffs continued to pay Flagstar the lower monthly payment amounts they had been paying since April 2012.[21] In October, Plaintiffs even paid a slightly higher amount to cover the closing costs that Flagstar requested before the Proposed Modification Agreement was to become effective.[22]

In October or November 2012, Flagstar sent, and Plaintiffs received, another letter with a copy of the Proposed Modification Agreement.[23] Due to an error in the spelling of Plaintiff Carmen Jimenez's name in the Proposed Modification Agreement, Plaintiffs were unable to execute the agreement during October or November 2012.[24]

In early December 2012, Flagstar sent, and Plaintiffs received, a notice of acceleration and notice of foreclosure sale, listing a scheduled foreclosure sale date of January 1, 2013.[25] After receiving the notice, Plaintiffs allegedly called Flagstar, and were told, "not to worry about [the scheduled foreclosure sale] and that [Flagstar] would ask for an extension."[26] However, Plaintiffs were never told, on that day or later, that they actually received an extension or that the sale was postponed.[27]

---

[18] Sept. 28, 2012 Letter at 2.
[19] Sept. 28, 2012 Letter at 3.
[20] Carmen Jimenez Aff. at 2.
[21] Carmen Jimenez Aff. at 2; Cashier's Check Receipts, Sept. 2012–Jan. 2013, Doc. 14, Ex. 5
[22] Carmen Jimenez Aff. at 2; Cashier's Check Receipt, Oct. 2012.
[23] Carmen Jimenez Aff. at 2.
[24] Carmen Jimenez Aff. at 2.
[25] Notice of Sale, Doc. 12, Ex. 2A; Carmen Jimenez Aff. at 2.
[26] Carmen Jimenez Aff. at 2; Carmen Jimenez Depo. 49:5–6.
[27] Carmen Jimenez Depo. at 49:25–50:10.

On December 24, 2012, Flagstar sent Plaintiffs a corrected copy of the Proposed Modification Agreement.[28] The agreement was sent with the same form letter as that sent in September 2012, and it stated, the Proposed Modification Agreement "must be returned to us within 14 days with closing funds, no later than **January 7, 2013**."[29] The letter also contained the same set of "temporary payment coupons," as in the September letter, with the last coupon stating, "[y]our **4th** modified payment is due on **January 1, 2013**, in the amount of **$1,092.79** [the modified payment amount]."[30] Finally, the December letter noted, just as the September letter did, that "collection activity [would] continue pending the modification agreement becoming binding and effective."[31]

On January 1, 2013, Plaintiffs' property was sold at a foreclosure sale to Defendant American Homes 4 Rent Properties One, LLC ("American Homes").[32] Though the evidence is in dispute, Plaintiffs assert that they sent a signed copy of the Proposed Modification Agreement along with their January 2013 mortgage payment to Flagstar the first week of January 2013.[33] Flagstar asserts that it never received a signed copy of the Proposed Modification Agreement, and that regardless, it never signed it.[34] Finally, Plaintiffs assert that Flagstar refused their January 2013 payment.[35]

## B. Procedural History

---

[28] Dec. 24, 2012 Letter, Doc. 12, Ex. 1G.
[29] Dec. 24, 2012 Letter at 1 (emphasis in the original). The September letter had listed a deadline of October 12, 2012. Sept. 28, 2012 Letter at 1.
[30] Dec. 24, 2012 Letter at 2 (emphasis in the original).
[31] Dec. 24, 2012 Letter at 1.
[32] Substitute Trustee's Deed, Doc. 12, Ex. 2B.
[33] Carmen Jimenez Aff. at 3. *But see* Cashier's Check, dated Jan. 16, 2013, Doc. 14, Ex. 5; Carmen Jimenez Dep. 49:25–50:17, 51:2–5.
[34] Ellison Aff. ¶ 14, Doc. 12, Ex. 1
[35] Carmen Jimenez Aff. at 3.

On February 25, 2013, Plaintiffs filed suit in the 166th Judicial District Court of Bexar County, Texas, naming Flagstar and American Homes as Defendants. Through their state-court petition, which remains their live pleading, Plaintiffs assert causes of action against Flagstar for wrongful foreclosure, breach of contract, fraud, and promissory estoppel. Plaintiffs also seek declaratory and injunctive relief to rescind the sale and prevent Defendants from removing Plaintiffs from the property. The state court granted Plaintiffs' request for a temporary restraining order. Thereafter, Flagstar answered, and on March 8, 2013, removed the action to this Court.[36]

On September 11, 2013, Flagstaff filed its motion for summary judgment, challenging Plaintiffs' claims as factually or legally insufficient.[37] Plaintiffs responded, asserting disputed facts, and Flagstaff replied. In its reply Flagstar challenged, among other things, the admissibility of Plaintiffs' evidence.

## II. Legal Standard

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[36] Notice of Removal, Doc. 1.
[37] MSJ, Doc. 12.

Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

### III. Discussion

**A. Flagstar's Objections to Plaintiffs' Summary Judgment Evidence**

In its reply, Flagstar objects to portions of Plaintiffs' summary judgment evidence, asserting that portions are inadmissible.[38] Flagstaff makes two general objections. First, it objects to the introduction of declarations allegedly made by Flagstar representatives. Second, it challenges portions of Plaintiff Carmen Jimenez's affidavit as contradicting prior deposition testimony. For the following reasons, Flagstar's objections are overruled.

First, Flagstar challenges five statements in Plaintiff Carmen Jimenez's affidavit: (1) that, "it was explained to us that [the Forbearance Agreement] was a trial modification and that if we made all of our payments on time that our loan would be modified;" (2) that, "we were told that we would be approved for a permanent loan modification, that all we had to do was fill out the agreement and send it back;"(3) that, "I was shocked because Flagstar had told me that we got the modification and we had made all of our payments;" (4) that, "I was told not to worry about [the foreclosure sale] and that they would ask for an extension;" and (5) that, "we were told not to worry about foreclosure."[39] Flagstar objects to these alleged declarations as inadmissible hearsay, parole evidence, or precluded by the statute of frauds; however, Flagstar offers minimal argument and no legal authority explaining why the statements are inadmissible on these grounds. The Court finds the objections meritless. The declarations, as opposing party

---

[38] Reply at 6–8.
[39] Reply at 7–8.

7

declarations, are likely excluded from the definition of hearsay. *See* FED. R. EVID. 801(d)(2). The parole evidence rule is irrelevant. The rule bars a party from offering statements contradicting the express terms of a valid integrated agreement. *See F.D.I.C. v. Wallace*, 975 F.2d 227, 229 (5th Cir. 1992); *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (Tex. 1958). Here, Plaintiffs are not seeking to contradict the terms of the Note, Deed of Trust, or Forbearance Agreement; rather they seek to force Flagstar to amend the Note and Deed of Trust under a theory of breach of contract or promissory estoppel. The Fifth Circuit has allowed similar claims to proceed. *See Martin-Janson v. JP Morgan Chase Bank, N.A.*, --- Fed App'x ---, 2013 WL 3533682, at *4 (5th Cir. July 15, 2013) (refusing to dismiss a mortgage modification claim based on promissory estoppel). Finally, as explained below, the statute of frauds is an affirmative defense to a claim for breach of contract or promissory estoppel; it is not a challenge to admissibility. *See* FED. R. CIV. P. 8(c); *Martin-Janson*, 2013 WL 3533682, at *4; *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006).

Second, Flagstaff challenges certain portions of Plaintiff Carmen Jimenez's affidavit as contradicting her sworn deposition testimony.[40] While Plaintiff Carmen Jimenez's affidavit conflicts to some degree with her deposition statement by paraphrasing conversations and stating facts with ambiguity, this conflict raises an issue of credibility rather than admissibility. *See Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 893 (5th Cir.1980) ("In considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition.");

---

[40] Reply at 7–8. Flagstar challenges Plaintiff Carmen Jimenez's statement that Plaintiffs sent back the Proposed Modification Agreement "the first week of January of 2013," when deposition testimony showed that Plaintiff Carmen Jimenez alternately stated that she did not know or "around the 7th, 8th" *Id.*; Carmen Jimenez Depo 51:2–5, 49:25–50:17. Flagstar also challenges the affidavit's description of Plaintiffs' conversation with Flagstar in December 2013. Reply at 8.

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 4:08-CV-03181, 2010 WL 4366990 (S.D. Tex. Oct. 27, 2010) (finding that a slight conflict between a summary judgment affidavit and earlier deposition testimony raised an issue of credibility, rather than admissibility). In ruling on Flagstar's motion for summary judgment, the Court will draw all reasonable inferences and construe all the evidence in favor of Plaintiffs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Accordingly, Flagstar's objections to, at most, misleading statements are overruled.

**B. Breach of Contract**

Plaintiffs assert a breach of contract claim against Flagstar, alleging that "Flagstar breached its modification agreement with Plaintiffs by submitting a modification offer to Plaintiffs that Plaintiffs accepted."[41] The subsequent foreclosure of Plaintiffs' real property by Flagstar constituted a breach of contract."[42] Flagstar moved for summary judgment on Plaintiffs' claim, asserting that no binding modification agreement existed.[43] Flagstar asserts that it did not sign the contract, and that Plaintiffs did not submit an executed copy of the contract to Flagstar until after January 7, 2013, if at all. Flagstar also asserts that it did not orally create a modified contract, and that even if the Court determines that it did, the contract is void under the statute of frauds.

To succeed on a breach of contract claim, a plaintiff must show "(1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages." *Rice v. Metro. Life Ins. Co.,* 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.) (internal quotation marks omitted). A valid

---

[41] Pet. ¶ 15.
[42] Pet. ¶ 15.
[43] MSJ at 10.

9

contract in Texas requires (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) meeting of the minds; (4) each party's consent to the terms; (5) the contract to be executed and delivered with intent that it be mutual and binding; and (6) consideration. *Id.* at 670.

Here, even construing all the evidence in favor of Plaintiffs, the Proposed Modification Agreement fails as a valid contract because Flagstar did not express an intent to be bound. The Proposed Modification Agreement was submitted to Plaintiffs as a proposal, requiring each party to complete certain steps before it became effective. Plaintiffs were required to execute the agreement within a certain timeframe, maintain income eligibility, and pay closing costs.[44] Plaintiffs were also potentially required to execute additional documents.[45] Likewise, Flagstar was required to sign and accept the Proposed Modification Agreement.[46]

It is undisputed that Flagstar did not sign the Proposed Modification Agreement. In Texas, courts give significant weight to express requirements that contracts be executed before they are binding. *Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x. 548, 554–55 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 1272, 185 L. Ed. 2d 185 (2013) (citing *RHS Interests, Inc. v. 2727 Kirby Ltd.*, 994 S.W.2d 895, 897–99 (Tex. App.—Houston [1st. Dist.] 1999, no pet.). Here, where both the Proposed Modification Agreement and the letter sent with the agreement indicated that the agreement was subject to Flagstar's acceptance, it was not binding until signed by Flagstar.

Although Flagstar accepted lower mortgage payments from March to December 2012, its acceptance of these payments does not indicate an intent to be bound by the Proposed Modification Agreement. Plaintiffs owed regular mortgage payments in excess of the proposed

---

[44] Sept. 28, 2012 Letter at 1.
[45] Proposed Modification Agreement ¶ 7.
[46] Proposed Modification Agreement ¶ 7; Sept. 28, 2012 Letter at 1.

modified amounts.  Flagstar's acceptance of Plaintiffs' lower payments can reasonably be seen as acceptance of partial payments on Plaintiffs' regular mortgage payments. *See Pennington* 493 F. App'x. 548, 555 (5th Cir. 2012) (holding that a lender did not indicate an intent to be bound by an unsigned permanent modification agreement, after it had accepted lower mortgage payments under a trial modification plan).  Moreover, Flagstar continually asserted that Plaintiffs were in default on their regular mortgage payments and that its foreclosure efforts could proceed.[47]

Finally, to the extent Plaintiffs' breach of contract claim is based, not on the written Proposed Modification Agreement, but on a separate, alleged oral promise to modify the loan after successful completion of the Forbearance Agreement, Plaintiffs' claim fails as barred by the statute of frauds.

In Texas, the statute of frauds requires that loan agreements in excess of $50,000 be in writing to be enforceable. TEX. BUS. & COM. CODE § 26.02; *see also Martin-Janson*, 2013 WL 3533682, at *4.  The statute defines "loan agreements" to include "one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation." TEX. BUS. & COM. CODE § 26.02(a)(2).  If a contract falls under the statute of frauds, then "any subsequent oral material modification to the contract" also falls under the statute.  *SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W.3d 275, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d

---

[47] Forbearance Agreement at 1; Sept. 28, 2012 Letter at 2; Dec. 24, 2012 Letter at 2.

249, 256 (5th Cir. 2013) ("An agreement regarding the transfer of the property or modification of a loan must . . . be in writing to be valid.").

Plaintiffs' mortgage was created in the original amount of $146,566.[48] By September 2012, the principal balance remained above $140,000.[49] Thus, the loan and any modification fall within the ambit of the statute of frauds. TEX. BUS. & COM. CODE § 26.02; *SP Terrace, L.P.*, 334 S.W.3d at 282. Since the alleged oral agreement was not reduced to writing and signed by Flagstar, the statute of frauds prohibits Plaintiffs from enforcing the alleged promise. TEX. BUS. & COM. CODE § 26.02; *see Gordon v. JPMorgan Chase Bank, N.A.*, 505 F. App'x. 361, 364–65 (5th Cir. 2013) (finding enforcement of an alleged oral mortgage modification agreement prohibited by the statute of frauds).

The equitable doctrine of promissory estoppel can bar the application of the statute of frauds and make an otherwise unenforceable oral promise, enforceable. *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App.—Corpus Christi 2001, no pet.). Generally a party can establish promissory estoppel by proving: "(1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment." *Id.* However, when promissory estoppel is raised to bar the application of the statute of frauds, the party asserting promissory estoppel must prove that the promisor promised "to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds." *Martins*, 722 F.3d at 257 (citing *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex. App.—Houston 1992, writ denied); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir. 2010) ("[T]he agreement must be in writing at the time of the oral promise to sign

---

[48] Deed of Trust at 1.
[49] Sept. 28, 2012 Letter at 1.

it").[50] Here, Plaintiffs only assert that Flagstar made an oral promise to modify the loan; they do not assert that Flagstar agreed to sign a written modification.[51] In fact, when Plaintiffs were presented with the written Proposed Modification Agreement, Flagstar reserved the right to accept or decline the final modification by withholding its signature. Since Plaintiffs have produced no evidence to establish that promissory estoppel applies to bar the statute of frauds, the Court finds that Flagstar's alleged oral promise to modify Plaintiffs' mortgage is unenforceable.

### C. Claim for Promissory Estoppel

In their petition, Plaintiffs assert a claim for promissory estoppel. Plaintiffs' assert:

> Flagstar's actions are barred by promissory estoppel insomuch as Flagstar 1) made a promise to Plaintiffs by offering the loan modification and setting forth the terms of acceptance; 2) Plaintiffs relied on the promise; 3) the foreclosure on Plaintiffs' home was a resulting legal detriment that occurred; and 4) justice requires the enforcement of that promise.[52]

Flagstar responds that it did not make an enforceable promise to modify Plaintiffs' mortgage or halt the January 2013 foreclosure sale.[53]

Although normally a defensive theory, promissory estoppel can be asserted as a cause of action, where a promisor unjustly induces another to substantial action or inaction. *Martin-Janson*, 2013 WL 3533682, at *4; *see e.g. Ford*, 44 S.W.3d at 138–40. "However, as when promissory estoppel is used as a defense, if the underlying oral promise is barred by the statute of frauds, the plaintiff must show that the promisor promised to sign a written document that would satisfy the statute of frauds." *Ford*, 44 S.W.3d at 140.

---

[50] This Court has previously noted that Texas appellate courts sometimes omit the requirement that the contract be prepared prior to the promise to sign it. *See Montalvo v. Bank of Am. Corp.*, SA-10-CV-360-XR, 2013 WL 870088, at *11 n.33 (W.D. Tex. Mar. 7, 2013) (citing *Ford*, 44 S.W.3d at 139).
[51] Carmen Jimenez Aff. at 1.
[52] Pet. ¶ 17.
[53] MSJ at 14.

The Court remains troubled by this case. Plaintiff apparently tried their best to work with Defendant in modifying their mortgage. In the context of a motion to dismiss, the Fifth Circuit has held that a promissory estoppel claim could survive a Rule 12(b)(6) motion. *Martin-Janson*, 2013 WL 3533682, at *5. In *Martin-Janson*, the plaintiffs sought discovery of the draft loan modification agreement and sought discovery to prove that JPMorgan "promised to sign a written agreement which itself complies with the statute of frauds." *Id*.

In this case, however, the Court is addressing a motion for summary judgment. Plaintiffs allege that Flagstar made a promise to Plaintiffs by offering the loan modification. The competent summary judgment evidence, however, reveals that Flagstar set forth conditions upon which it would accept a loan modification before it would agree to execute the document. Accordingly, Plaintiffs' claim for promissory estoppel based on Flagstar's alleged promise to modify the mortgage fails for the reasons explained above.

Plaintiffs also cannot establish a claim for promissory estoppel based on Flagstar's alleged representations that Plaintiffs should "not [] worry about [the scheduled foreclosure sale] and that [Flagstar] would ask for an extension."[54] "An agreement to delay foreclosure is subject to the Texas statute of frauds, and, accordingly, must be in writing to be enforceable." *Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x. 326, 328–29 (5th Cir. 2013). As an initial matter, Flagstar never promised to delay the foreclosure sale; it only promised to seek an extension.[55] Furthermore, Plaintiffs have offered no evidence that Flagstar promised to sign a written agreement to delay the foreclosure sale. Accordingly, Plaintiffs' claim for promissory estoppel based on Flagstar's alleged promise to seek an extension of the foreclosure sale fails. *See Id.*

---

[54] Carmen Jimenez Aff. at 2; Carmen Jimenez Depo. 49:5–6.
[55] Carmen Jimenez Depo. at 49:25–50:10.

(denying promissory estoppel defense where there was no written agreement to delay the foreclosure sale).

## D. Fraud

Plaintiffs' claim for fraud similarly fails. Plaintiffs claim in their petition that, "Flagstar acted fraudulently insomuch as Flagstar entered into a modification agreement with Plaintiffs knowing that it was not prepared to honor the modification agreement Flagstar offered."[56] Since, as explained above, Flagstar did not enter into a modification agreement, Plaintiffs' claim fails.

## E. Wrongful Foreclosure

Plaintiffs' final substantive claim is for wrongful foreclosure. Plaintiffs assert that they were not in default at the time of foreclosure and that Flagstar did not provide proper notice of Plaintiffs' alleged default and the scheduled foreclosure sale.[57]

Since Plaintiffs and Flagstar never modified the mortgage, default can only be considered with respect to the original loan documents. Here, Plaintiffs were undoubtedly delinquent on their original Note in March 2012, and, in fact, acknowledged being so.[58] Plaintiffs do not provide evidence that at any time after March 2012, they cured their mortgage deficiency. Thus, the evidence shows that their account was in default at the time of the foreclosure sale.

Furthermore, to the extent Plaintiffs rely on a waiver theory to argue that Flagstar waived its right to full payment from April to December 2012, the theory is of no avail. In Texas, waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). Arguably, Flagstar waived its right to full mortgage payments for the months of April to

---

[56] Pet. ¶ 16.
[57] Pet. ¶¶ 13–14.
[58] Forbearance Agreement at 1; *see also* Notice of Default, dated April 3, 2013.

December 2013 when it instructed Plaintiffs through the Forbearance Agreement and receipt of temporary payment coupons to pay an amount less than their Note and Deed of Trust otherwise required.[59] However, Plaintiffs were delinquent prior to the Forbearance Agreement and payment coupons, and Flagstar could accelerate the Note based on this pre-April 2012 delinquency, regardless of whether it waived its right to full payment for the months of April to December 2012. *See Martin-Janson*, 2013 WL 3533682, at *3 (holding that a lender could accelerate based on a mortgage delinquency accumulated prior to an alleged waiver).

Moreover, the evidence shows that Flagstar never waived its right to foreclose based on the delinquency accumulated prior to April 2012. Though Flagstar did not accelerate Plaintiffs' loan in April 2012, the Deed of Trust provided that Flagstar did not waive its right to subsequently do so.[60] Furthermore, the Forbearance Agreement clarified that the "account [would] not be considered current after the agreement end[ed],"[61] and the letters received in September and December 2012 indicated that "collection activity [would] continue pending the modification agreement becoming binding and effective."[62] Thus, the record shows that Flagstar continually maintained its right to accelerate based on the pre-April 2012 default.

Since Plaintiffs were in default, Flagstar could foreclose if it complied with the Deed of Trust and the requirements of Chapter 51 of the Texas Property Code.[63] Section 51.002 of the Property Code requires that a debtor be served with two notices prior to foreclosure—a notice of default and a notice of sale. TEX. PROP. CODE. § 51.002(b), (d); *Rodriguez v. Ocwen Loan Servicing, LLC*, 306 F. App'x 854, 855–56 (5th Cir. 2009) (per curiam). Under Texas law, a

---

[59] Forbearance Agreement at 1; Sept. 28, 2012 Letter at 3.
[60] Deed of Trust ¶ 11 ("Any forbearance by [Flagstar] in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.").
[61] Forbearance Agreement at 1.
[62] Sept. 28, 2013 Letter at 2; Dec. 24, 2012 Letter at 2.
[63] Deed of Trust ¶ 18.

foreclosure sale may be set aside as invalid if the notices required under § 51.002 are not properly and timely served. *See Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 n.6 (5th Cir. 1989).

Here, Plaintiffs' only challenge to the foreclosure sale procedure is their challenge to the sufficiency of the required notice of default.[64] Plaintiffs acknowledge that they received the April 3, 2012, notice of default, but they assert that it would be unconscionable to find the notice sufficient when almost nine months had passed between the notice and the foreclosure sale.[65] Plaintiffs, however, cite to no legal authority to support their position; and, in fact, legal authority suggests that early notice is valid. *See Koehler v. Pioneer Am. Ins. Co.*, 425 S.W.2d 889, 892 (Tex. Civ. App.—Fort Worth 1968, no writ) (holding, with respect to the notice of foreclosure sale that the notice need not be posted immediately prior to sale); *see also Merchant v. PHH Mortg. Corp.*, 12-12-00261-CV, 2013 WL 5593493 (Tex. App.—Tyler Oct. 9, 2013, no. pet. h.) (mem. op.). Moreover, Plaintiffs do not explain how the Forbearance Agreement, subsequent letters from Flagstar, and the December notice of foreclosure sale—all indicating that the loan was in default—did not give Plaintiffs sufficient notice of default and underscore the severity of the situation. The Court, therefore, finds the April 3, 2012, notice sufficient to satisfy the Texas Property Code notice of default requirements, and rejects Plaintiffs' contention that equity bars the notice's effectiveness. *See* TEX. PROP. CODE. § 51.002(d). Accordingly Flagstar's motion for summary judgment is granted on Plaintiffs' claim for wrongful foreclosure.

### F. Declaratory and Injunctive Relief.

---

[64] Pet. ¶ 14; Resp. at 5.
[65] Resp. at 5.

In their petition, Plaintiffs assert a cause of action for declaratory judgment. The Fifth Circuit has held that when a complaint purports to assert an independent cause of action for declaratory judgment alongside another cause of action, the request for declaratory judgment should be construed as a theory of recovery predicated upon the accompanying claim. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996). Accordingly, district courts dismiss requests for declaratory relief when all pleaded causes of action fail. *See, e.g.*, *Scott v. Bank of Am.*, No. SA:12-CV-917-DAE, 2013 WL 1821874, at *9 (W.D. Tex. Apr. 29, 2013); *Amaro v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-3776-B, 2013 WL 1187284, at *4 (N.D. Tex. Mar. 22, 2013); *Marsh v. JPMorgan Chase*, 888 F. Supp. 2d 805, 815 (W.D. Tex. 2012). Here, all of Plaintiffs' independent causes of action fail, and accordingly, Flagstar's motion for summary judgment on Plaintiffs' declaratory claim is granted.

Finally, Plaintiffs' request for an injunction enjoining Defendants from attempting to remove or otherwise evict Plaintiffs from the property is denied as their request is not supported by a viable underlying cause of action. *See Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009); *Von Scheele v. Wells Fargo Bank, N.A.*, SA-12-CV-00690-DAE, 2013 WL 5346710, at *6 (W.D. Tex. Sept. 23, 2013) (denying a plaintiff's request for injunctive relief where the defendant was granted summary judgment on all claims).

## IV. Conclusion

In light of the foregoing analysis, Defendant Flagstar's motion for summary judgment (docket no. 12) is GRANTED. No claims remain pending in this case.

The Clerk is directed to enter judgment that Plaintiffs take nothing. Defendants are awarded their costs of court and must file a Bill of Costs in the form required by the Clerk of Court within fourteen days of judgment.

It is so ORDERED.

SIGNED this 5th day of December, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE